IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

NCR CORPORATION, :

          Plaintiff,

   -vs-

KORALA ASSOCIATES LTD.,

          Defendants. :

Case No. 3:04-cv-407

Chief Magistrate Judge Michael R. Merz

## DECISION AND ENTRY

This case is before the Court on Defendant Korala Associates Ltd.'s (Korala) Consolidated Motion to Dismiss and to Compel Arbitration. (Doc. 20). The parties have fully briefed the issues, (*Id.*; Doc. 26; 335; 41), and the matter is ripe for decision on the merits.

Plaintiff NCR Corporation (NCR) filed a Complaint against Korala alleging claims for copyright infringement of its APTRA XFS software, copyright infringement of its S4isoftware infringement, breach of contract, and unfair competition. (Doc. 1). Korala filed a Motion to Dismiss and to Compel Arbitration. (Doc. 9). Subsequently, NCR filed an Amended Complaint raising seven (7) claims: (1) copyright infringement of its APTRA XFS software; (2) copyright infringement of its S4i software; (3) contributory copyright infringement of its APTRA XFS software; (4) contributory copyright infringement of its S4i software; (5) tortious interference with contract; (6) illegal importation of infringing copies; and (7) unfair competition. (Doc. 16). Korala then filed its Consolidated Motion to Dismiss and to Compel Arbitration directed to NCR's Amended Complaint (Motion) which is currently at issue. (Doc. 20).

The parties have consented to plenary magistrate judge jurisdiction pursuant to 28 U.S.C. §636(c) and the matter has been referred on that basis. (Doc. 43).

Korala's Motion has several branches. Korala has moved to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1), NCR's claims for copyright infringement of its APTRA XFS software (Count I), copyright infringement of its S4i software (Count II), contributory copyright infringement of its APTRA XFS software (Count III), and contributory copyright infringement of its S4i software (Count IV). Korala has also moved to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), NCR's claims for contributory copyright infringement of its APTRA XFS software (Count III), contributory copyright infringement of its S4i software (Count IV), illegal importation of infringing copies (Count VI), and unfair competition (Count VII). In addition, Korala has moved to compel arbitration of all of NCR's claims. Finally, Korala has moved under the doctrine of *forum non conveniens* to dismiss the matter in favor of a court of competent jurisdiction in Scotland.

## Subject Matter Jurisdiction

Korala's 12(b)(1) Motion is based on its claim that almost all of the acts alleged by NCR as infringing in Counts I-IV occurred outside the United States and the Copyright Act has been held not to have extraterritorial effect, citing *United Dictionary Co. v. G.C. Merriam Co.*, 208 U.S. 260 (1908); *Liberty Toy, Inc., v. Fred Silber Co.*, 1998 U.S. App. LEXIS 14866 (6th Cir. 1998).

Federal courts are of course courts of limited jurisdiction; they are empowered to hear only those cases which are within the judicial power of the United States as defined in the United States Constitution and as further granted to them by Act of Congress. Therefore there is a

presumption that a federal court lacks jurisdiction until it has been demonstrated. *Turner v. President, Directors and Co. of the Bank of North America,* 4 U.S. 8, 4 Dall. 8, 1 L. Ed. 718 (1799).

NCR asserts subject matter jurisdiction exists under 28 U.S.C. §1331, 1332, 1338, and 1367. Without doubt, there is diversity of citizenship between the parties and more than $75,000 in controversy, satisfying the requirements of §1332. NCR's claims of copyright infringement purport to arise under United States copyright law, 17 U.S.C. §101, et seq., thus satisfying both §1331 and §1338. 28 U.S.C. §1367, of course, is limited to creating supplemental jurisdiction over state law claims.

It appears to the Court that Korala's subject matter jurisdiction claim confuses the questions of subject matter jurisdiction of the federal courts and the legislative jurisdiction of the United States Congress. To put it another way, the question whether the Copyright Act has extraterritorial effect is a question of federal law, arising out of interpretation of the Copyright Act, or perhaps a question of federal constitutional law. In either event, it is a matter which the federal courts are empowered to decide. The Court concludes it has jurisdiction over the subject matter of this action and Korala's Motion to Dismiss on that basis is denied.

## Motion to Compel Arbitration

For purposes of the present Motions, the facts of this matter, gleaned from NCR's Amended Complaint, are as follows.

NCR is a Maryland corporation with its principal place of business located in Dayton, Ohio. Korala is a company organized under the Companies Act of the United Kingdom with its

3

principal place of business within the United Kingdom located at John Cotton Business Centre, Sunnyside, Edinburgh, Scotland, and its principal place of business within the United States located in Springboro, Ohio.

NCR is one of the largest providers of Automatic Teller Machine (ATM) equipment, integrated hardware, and software systems, and related maintenance and support services in the world. NCR's ATM business is a part of its Financial Solutions Division which is headquartered in Dayton, Ohio. Over 300,000 NCR bank ATMs are installed around the world and some of these ATMs operate in the Windows operating system environment. Others operate in the OS/2 operating system environment. Approximately 150,000 of these ATMs require the installation of upgraded system software in order to be "Triple-DES" compliant. The NCR system software to be upgraded includes APTRA XFS and S4i software and is installed by NCR at a cost of approximately $1,000 per ATM. APTRA XFS is installed on NCR ATM's running the Windows operating system. S4i is installed on NCR ATMs running the OS.2 operating system.

NCR owns United States Copyright Registration TXu-1-008-350, registered December 11, 2001, on the APTRA XFS software. On March 3, 2004, NCR filed on an expedited basis an application to register a copyright in "Platform for Windows NT–Ulysses", the precursor software to APTRA XFS. On March 3, 2004, NCR also filed, on an expedited basis, applications to register copyrights in two versions of the S4i software. APTRA XFS and S4i include platform and device-resident software components.

On December 15, 1998, Korala entered into a Software License Agreement (Agreement) with NCR. A Mutual Non-Disclosure Agreement (MNDA) between Korala and NCR Financial Solutions Group (NCR Financial), dated April 9, 1998, was incorporated as Exhibit G into

the Agreement. On March 29, 1999, Korala and NCR Financial entered into an Addendum to the MNDA.

Pursuant to the Agreement, Korala agreed to develop and license to NCR three sets of Kalypso software components, referred to as Device Controls, Self Service Controls, and Service Providers (the Kalypso Components). To facilitate Korala's performance of its obligations under the Agreement, NCR agreed to loan to KAL certain computer hardware and/or software items that were necessary to enable Korala to adapt and support the Kalypso Components. This loan arrangement was provided for in the Agreement. Among the equipment that NCR loaned to Korala pursuant to the Agreement was an NCR ATM on which NCR's copyrighted APTRA XFS Software was installed. Pursuant to the Agreement, Korala acknowledged "that the Equipment is being provided to [Korala] exclusively for use in connection with the development of the [Kalypso Components] and Documentation and performance of [Korala's] other obligations under this Agreement" and Korala promised NCR that it would not "use or permit the use of the Equipment for any other purpose whatsoever." In addition, pursuant to the Agreement, Korala agreed to "keep confidential all documentation and information that NCR furnished to [Korala] relating to the Equipment" and not "disclose, transfer, or otherwise make available such information to any third party."

In addition to the ATM which NCR loaned to Korala pursuant to the Agreement, Korala has on other occasions obtained and accessed additional NCR ATMs on which APTRA XFS or S4i was installed. In some instances Korala obtained the ATMs from NCR bank licensees. In other instances Korala obtained the ATMs from dealers of used or refurbished NCR ATMs. In such instances, NCR software may not have been removed from the used ATMs and could, therefore,

5

remain even though such software is no longer licensed for use. Previously granted licences respecting such software would have been terminated by their own terms and were in any event non-transferable by the previous licensees.

All NCR ATM licenses contain provisions that limit the use of any NCR software, including the APTRA XFS and S4i software, solely to purposes authorized in writing by NCR. Such licenses do not permit NCR licensees to sublicense or transfer the rights to any NCR software, including the APTRA XFS and S4i software, to third parties. No NCR software that may reside on a used or refurbished NCR ATM may be operated without authorization from NCR. Dealers in used or refurbished NCR ATMs cannot grant users permission to operate NCR's APTRA XFS or S4i software, unless they are an authorized NCR software reseller, and such users cannot lawfully obtain such permission, unless they obtain a new and valid software license from NCR or a party authorized by NCR to license the use of NCR software.

Korala, therefore, is not licensed to operate the APTRA XFS or S4i software installed on any currently configured NCR bank ATM. Moreover, having previously entered into the Agreement with NCR, which contained strict provisions on confidentiality and authorized use, Korala was well aware of the confidentiality restrictions and use limitations employed by NCR with respect to its ATM system software.

Without permission from NCR, Korala obtained access to, made unauthorized use of, and engaged in unauthorized copying of the APTRA XFS and/or S4i software. In addition, Korala engaged in unauthorized copying of the APTRA XFS and/or S4i software when it operated NCR ATMs whether obtained from NCR pursuant to the Agreement, from an NCR licensee, or from a second-hand ATM dealer. Indeed, Korala could not have developed its Triple-DES upgrade or

a PC upgrade for NCR ATMs absent illegal copying and analysis of NCR's APTRA XFS and/or S4i software. After it developed its product using NCR's copyrighted software, Korala imported its product in the United States and demonstrated it during the November 16-19, 2004, BAI Retail Delivery Conference & Expo in Las Vegas, Nevada.

In addition to its Motion to Dismiss, Korala has moved to compel arbitration pursuant to the Federal Arbitration Act, specifically 9 U.S.C. §206.

As noted above, NCR and Korala entered into an Agreement on December 15, 1998. Section 22.0 of that Agreement reads:

> 22.0 *Arbitration of Disputes: Governing Law*
>
> 22.1 Any and all questions of enforceability and interpretation which may arise under this Agreement shall be determined and governed by, and in accordance with, the laws of England and Wales, from time to time in force.
>
> 22.2 Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitrator shall be appointed upon the mutual agreement of both parties failing which both parties will agree to be subject to any arbitrator that shall be chosen by the President of the Law Society.

Amended Complaint, Ex. E thereto (Doc. 19).

In addition, section 17.0 of the Agreement provides that NCR's and Korala's obligations with respect to confidentiality are governed by the terms and conditions of the Mutual Non-Disclosure Agreement which is appended to the Agreement. *Id.*

. Section 206 of Title 9 reads in part:

> **§206. Order to compel arbitration; appointment of arbitrators**
>
> A court having jurisdiction under this chapter may direct that

7

>arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. ...

9 U.S.C. §206.

The Federal Arbitration Act (FAA) manifests a strong and liberal policy in favor of arbitration of disputes. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625 (1985); see also, *Decker v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 205 F.3d 906, 911 (6th Cir. 2000). The Supreme Court has long recognized that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of in interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *AT&T Techs., Inc. v. Communications Workers of America,* 475 U.S. 643, 650 (1986), quoting *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. See *Moses H. Cone Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 24-25 (1983).

The legislative history of the FAA establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219 (1985). Passage of the Act was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered, and we must not overlook this principal objective when construing the statute, or allow the fortuitous impact of the Act on efficient dispute resolution to overshadow the underlying motivation. *Id.* at 220. Indeed, this conclusion is compelled by the Court's recent holding in *Moses H. Cone Memorial Hospital* [*supra*], in which we affirmed an order requiring enforcement of an arbitration agreement, even though the

arbitration would result in bifurcated proceedings. *Id.* at 220-21. That misfortune "occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Id.* at 221, citing *Moses H. Cone Memorial Hospital,* 460 U.S. at 20; 24-25.

Courts have held that the language in the Agreement, "[a]ny controversy or claim arising out of or relating to this contract", creates a broad scope of arbitration. *Southland Corp. v. Keating,* 465 U.S. 1, 15 n.7 (1984); *Ferro Corp v. Garrison Industries,* 142 F.3d 926, 937 (6th Cir. 1998)(the arbitration clause is conspicuously broad as it applies to "all controversies and claims arising out of or relating to this Agreement" )**;** *Orcutt v. Kettering Radiologists, Inc.,* 199 F.Supp.2d 746, 753 (S.D. Ohio 2002)(this Court and other courts have construed the phrase "arising out of or relating to" broadly, interpreting it to encompass all claims, contractual or tort, which touch upon matters covered by the agreement). An arbitration clause can cover "even real torts" if the allegations underlying the claims "touch on matters" covered by the agreement. *Fazio v. Lehman Bros., Inc.,* 340 F.3d 386, 395 (6th Cir. 2003)(citation omitted). In contrast, an agreement that calls for arbitration of matters only "arising under" the agreement, and not also "relating to" will be construed narrowly. See *Desktop Images, Inc. v. Ames*, 929 F.Supp. 1339, 1345 (D.Colo. 1996).

Although the Supreme Court has not directly addressed the issue of enforceability of arbitration agreements in the context of copyright infringement claims, in a series of four cases, the Supreme Court has upheld the enforceability of arbitration agreements under the FAA in connection with various other statutory claims. See *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991)(claim under Age Discrimination in Employment Act); *Rodriquez de Quijas b. Shearson/American Express, Inc.,* 490 U.S. 477 (1989)(claims arising under the Securities Act of 1933); *Shearson/American Express, Inc., b. McMahon,* 482 U.S. 220 (1987)(claim under § 10(b)

of the Securities Exchange Act of 1934 and claim under civil provisions of Racketeer Influenced and Corrupt Organizations Act); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1985)(claims brought under the Sherman Antitrust Act). By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. *Gilmer,* 500 U.S. at 26, citing *Mitsubishi,* 473 U.S. at 628. A claim for copyright infringement may be arbitrable. *Cf., Summit Training Source, Inc. v. Mastery Technologies, Inc.,* No 1:00-CV-127, 2000 U.S. Dist. LEXIS 8024 (W.D. Mich. June 1, 2000).

The lack of an express specification of venue in the arbitration agreement is not a bar to the arbitration itself. See *United States Lines, Inc.. v. Liverpool and London SS Protection and Indemnification Association,* 833 F.Supp. 350, 353 (S.D.N.Y. 1993). Indeed, the issue regarding the venue of the arbitration proceedings is properly presented to the arbitrator. *Westbrook Int'l, LLC b. Westbrook Technologies, Inc.,* 17 F.Supp.2d 681, 685 (E.D.Mich. 1998), citing, *Liverpool and London, supra.*

The arbitration clause in the Agreement which NCR and Korala executed in December, 1998, contains the language "[a]ny controversy or claim arising out of or relating to this contract". That language creates a broad scope of arbitration and encompasses all claims which touch upon matters covered by the agreement.

Every allegation in NCR's Amended Complaint relates to some part of the Agreement and will require examination and interpretation of the Agreement or an exhibit to the Agreement. Counts I, III, and VI of NCR's Amended Complaint involve allegations of copyright infringement related to the APTRA XFS software which NCR alleges was covered by the

10

Agreement. See, *e.g.,* Amended Complaint ¶¶21; 58. In Counts II, IV, and V, NCR alleges copyright infringement involving its S4i software. The S4i infringement claims are based on knowledge that NCR alleges Korala obtained pursuant to the Agreement. Finally, Count VII, which is a claim for unfair competition, is based on Korala's alleged disregard of the confidentiality provisions in the Agreement.

NCR raises several arguments in opposition to Korala's Motion to Compel Arbitration. However, this Court is not persuaded by any of those arguments. First, as noted above, a copyright infringement claim can be, as in this case, a proper subject for arbitration. Second, the arbitration clause in the Agreement between the parties contains the broad "arising out of or relating to" language. Third, the fact that the Agreement does not identify an arbitration venue is not a bar to arbitration; rather the issue of venue may be properly presented to the arbitrator. Fourth, because NCR has not moved for preliminary injunctive relief, there is no issue as to whether ordering arbitration is proper in view of a pending request for injunctive relief. Fifth, the Agreement has not been terminated.[1]

This Court concludes that NCR's claims that is raised in its Amended Complaint come within the purview of the arbitration clause of the Agreement which it and Korala entered in December, 1998.

Defendant Korala Associates, Ltd.'s Motion to Compel Arbitration, (Doc. 20), is well

---

[1] In support of its argument that the Agreement had been terminated, NCR submitted the Declaration of Philip A. Kasper in which he claims an attached e-mail terminated the Agreement. (Doc. 28, Attachment 13 thereto). However, the e-mail attached to Mr. Kasper's Declaration was not written by nor sent to Mr. Kasper; it was written by Richard Pitt and sent to Aravinda Korala. Further, Korala has submitted the Declaration of Aravinda Korala which tells 'the rest of the story'; that is, Mr. Korala's e-mail in response to Mr. Pitt that NCR continued to distribute Korala's software pursuant to the Agreement and that under those circumstances, NCR could not unilaterally terminate the Agreement. (Doc. 35, Attachment 2 thereto). Mr. Korala's Declaration establishes that NCR never responded to his e-mail and that there was no further discussion about terminating the Agreement.

taken and is granted.  The parties shall, in accordance with the terms of the December, 1998, Agreement, proceed to arbitration of their dispute and, if necessary, submit the issue of the venue of the arbitration to the arbitrator.

The Clerk shall enter judgment in favor of Defendant Korala Associates, Ltd. and against Plaintiff NCR Corporation dismissing the Amended Complaint without prejudice.

March 31, 2006.

s/ Michael R. Merz<br>Chief United States Magistrate Judge

J:\Korala_Dism.wpd